**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| DIMPLEBEN KOTHARI, *et al.*, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No.  3:24 C 50101 |
| | ) | |
| DIRECTOR, U.S. CITIZENSHIP AND | ) | Judge Rebecca R. Pallmeyer |
| IMMIGRATION SERVICES, | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Two groups of Plaintiffs filed this action.  One group of Plaintiffs are noncitizens living in the United States who have filed petitions for U nonimmigrant status ("U visa") and received bona fide determinations ("BFDs").  With BFDs, Plaintiffs are granted work authorization and deferred action, but this group of Plaintiffs claims that United States Citizenship and Immigration Services ("USCIS") has unlawfully withheld or delayed granting them an additional benefit: a waitlist determination.  Waitlist determinations ("WLDs") enable U visa petitioners to apply for advanced parole or parole.  Another group of Plaintiffs has received WLDs but contend that USCIS has wrongfully failed to grant their applications for advanced parole.

In a ruling entered last year, this court granted Defendant USCIS's Rule 12(b)(1) motion to dismiss.  The court dismissed claims brought by those Plaintiffs who had already received WLDs because USCIS's denial of parole is non-reviewable.  *Kothari v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 24 C 50101, 2025 WL 732075 (N.D. Ill. Jan. 4, 2025) ("*Kothari I*").  The court dismissed, for lack of standing, claims brought by Plaintiffs who had applied for U visas and alleged that USCIS had unlawfully withheld wait list determinations for them, but granted those Plaintiffs leave to file an amended complaint.  They have now done so, and USCIS has again moved to dismiss for lack of standing.  For the reasons explained here, the motion is granted.

**BACKGROUND**

**I.     Procedural Background**

In their initial complaint [1], filed on on March 15, 2024, Plaintiffs alleged that (1) USCIS had "unlawfully withheld or unreasonably delayed" wait list determinations ("WLDs") on their U-visa applications (Compl. [1] ¶¶ 316–38) (Count I); (2) USCIS had unlawfully withheld the benefit of advanced parole, which Plaintiffs argued USCIS was required to grant under the applicable statutes and regulations (*Id.* ¶¶ 339–44) (Count II); and (3) alternatively, that USCIS denied them advanced parole in an arbitrary and capricious manner (*Id.* ¶¶ 345–51) (Count III). The court granted USCIS's motion to dismiss [9] for lack of subject matter jurisdiction on Counts II and III because USCIS's advanced parole determinations are non-reviewable discretionary decisions. (Order [17] at 16); *see* 8 U.S.C.; *Kucana v. Holder,* 558 U.S. 233, 239 & n. 3 (2010); *Bolante v. Keisler,* 506 F.3d 618, 621 (7th Cir. 2007) ("The Attorney General's decision [on advance parole] is not judicially reviewable," citing § 1252(a)(2)(B)(ii).)

The court also dismissed Count I, finding that Plaintiffs lacked standing because a favorable decision by the court would not redress their injuries, as it was unclear whether USCIS would consider Plaintiffs for advanced parole if they were placed on the waitlist.  But, "out of an abundance of caution," the court gave Plaintiffs leave to amend their complaint, warning that it may be difficult for Plaintiffs to "plausibly allege that USCIS would be more likely to consider them for advance parole if they are awarded a spot on the waiting list, or that USCIS routinely disregards its own policies in this regard." (*Id.*)

Plaintiffs filed an amended complaint on March 4, 2025, alleging again that (1) USCIS unlawfully withheld waiting list decisions in contravention of what Plaintiffs argue is mandatory language in 8 C.F.R. § 214.14(d)(2), and (2) unreasonably delayed waiting list decisions in contravention of the Administrative Procedures Act ("APA").  (Am. Compl. [20] ¶¶ 316–383.) Plaintiffs' allegations to support Count I remain largely the same as in their initial complaint, but rather than alleging they have been denied the opportunity to apply for advanced parole, they

claim instead that USCIS's withholding of WLD denies them the opportunity to travel outside the country and apply for parole at a U.S. consulate abroad, thus effectively "trapping" them in the United States and rendering them unable to see family members abroad for many decades. (Am. Compl. [20] ¶¶ 102, 84.) USCIS has again moved to dismiss [24] under Rules 12(b)(1) and 12(b)(6). The court is, as before, sympathetic to Plaintiffs' position, but concludes that the allegations in their amended complaint remain insufficient to establish Article III standing.

## DISCUSSION

### I. Legal Standard

In moving to dismiss the amended complaint, USCIS argues that (1) Plaintiffs lack Article III standing under 12(b)(1) and (2) they fail to state a claim under 12(b)(6). Plaintiffs, as the party invoking jurisdiction, bear the burden of establishing standing. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). At the pleadings stage, this requires well-pleaded factual allegations plausibly suggesting each element of standing: (1) an injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs cannot establish standing by pointing to "hypothetical future harm that is not certainly impending;" rather, the harm plaintiffs contemplate must be "actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 409 (2013).

As discussed in the court's January 24, 2025 order, the court treats USCIS's motion to dismiss as a "factual challenge to subject matter jurisdiction," which essentially contends "there is *in fact* no subject matter jurisdiction, even if the pleadings are formally sufficient." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). This allows the court to "look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id.*

### II. Analysis

Plaintiffs aim to establish standing in two ways. They argue, first, that they have been deprived of an opportunity to travel abroad and apply for parole at a consulate abroad. (Am. Compl. [20] ¶ 102; Opp'n [26] at 2–3.) And second, they allege that they have been denied the

3

stability of WLDs because bona fide determinations (BFDs) are "mere policy memo benefits" that can "be rescinded without notice and comment rulemaking." (Am. Compl. [20] ¶ 114.)  The court examines each in turn.

### A.        Denied Opportunity to Apply for Parole

Plaintiffs allege that they have suffered an injury in fact because they have been denied the opportunity to be considered for parole.  As the court has previously recognized, Plaintiffs are correct that by alleging they have been deprived of the chance to obtain a benefit, they have pleaded an injury in fact.  *Kothari I*, 2025 WL 732075, *10 (citing *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 334 (7th Cir. 2019)).  But, importantly, Plaintiffs must also demonstrate that this court can redress their alleged injury.  *Patterson v. Howe*, 96 F.4th 992, 996 (7th Cir. 2024); *see also In re Helmstetter*, 44 F.4th 676, 679 (7th Cir. 2022) ("Standing is lacking if it is merely 'speculative'—as opposed to 'likely'—that the plaintiff's injury would be redressed by a favorable decision.")  They have not adequately done so.

If the court were to compel USCIS to make WLDs for Plaintiffs, this ruling would make no material difference in addressing Plaintiffs' alleged injury.  Section 214.14(d)(2) expressly gives USCIS the option to grant *either* "deferred action *or* parole" to noncitizens with a U visa WLD.  8 C.F.R. § 214.14(d)(2) (emphasis added); *see De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 720 F. Supp. 3d 794, 805 (N.D. Cal. 2024) ("the plain language of § 214.14(d)(2) makes clear that parole is a decision committed to the agency's discretion.  Under § 214.14(d)(2), USCIS is given the option of choosing to grant either deferred action or parole, and is not required to grant both"); *Arenales-Salgado-de-Oliveira v. Jaddou,* No. 23 C 61167, 2024 WL 68291, at *10 (S.D. Fla. Jan. 5, 2024) ("[O]n its face, section 214.14(d)(2) can only be read one natural way: it mandates *either* advance[] parole or deferred action, but not both, leaving USCIS a choice."); *Argueta v. Jaddou*, No. 4:23 C 3002, 2023 WL 8082113, at *7 (D. Neb. Nov. 21, 2023) ("[C]ontrary to Plaintiffs' contention, USCIS is not required to grant deferred action and parole to waiting list members; rather, USCIS need only grant one or the other."), *reconsideration denied*, 2024 WL

4

639863 (D. Neb. Feb. 15, 2024).  As a matter of USCIS policy, noncitizens "who are located in the United States at the time of waiting list placement are considered for deferred action and are not subsequently considered for parole even if they depart the United States after waiting list placement." (Declaration of Lynn Boudreau ("Boudreau Decl.") [24-1] ¶ 39.)  Harsh as this policy may be, Plaintiffs have offered no evidence to suggest that USCIS regularly disregards it.

Plaintiffs cite *Garcia v. Sessions*, 873 F.3d 553 (7th Cir. 2017), to support their claim that this court can redress the injury they suffer from denial of the opportunity to apply for parole abroad.  As Plaintiffs read that decision, it means that this court can compel USCIS to process them for WLDs even if doing so would make no real difference in their ability to receive parole.  In *Garcia*, the Seventh Circuit found that the "denial of a statutory right to apply for asylum" was a redressable injury because the injury was "caused by the Attorney General's interpretation of Section 1231(a)(5) and could be cured by a favorable decision of th[e] court."  *Garcia*, 873 F.3d at 556.  *Garcia* thus appears to support Plaintiffs' contention that they have suffered an injury in fact by being denied an opportunity to apply for parole.  But *Garcia* does not support the notion that Plaintiffs' injury is redressable by the court because, at most, the court could order USCIS to make a WLD for Plaintiffs.  Such an order would not immediately permit Plaintiffs to apply for parole.  This case thus differs from *Garcia,* where the court's favorable ruling would immediately entitle the plaintiff to apply for asylum, redressing the injury.  *See id.*  Here, in contrast, USCIS has clarified that "[n]either a bona fide determination nor waiting list placement is a basis for an alien to seek advance parole from USCIS via Form I-131, and neither a bona fide determination nor waiting list placement is a basis for an alien to seek parole at a port-of-entry."  (Boudreau Decl. [24-1] ¶ 45); *see also De Sousa v. Dir. of U.S. Citizenship & Immigr. Servs.*, 755 F. Supp. 3d 1266, 1275 (N.D. Cal. Nov. 5, 2024) ("[W]aiting list placement would not alter Plaintiffs' ability to be considered for parole, or improve their chances in any consideration for parole, regardless of whether their application for parole is made in the United States or abroad.").

Because the remedy Plaintiffs seek is detached from the injury for which they seek redress, the "disconnect between the relief sought and the harm stated . . . precludes finding the requisite redressability" to establish standing. *Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 16 (D.D.C. 2016). While Plaintiffs may have suffered an injury in fact in being denied the opportunity to apply for parole abroad, they do not have standing to challenge USCIS's delay in giving them WLDs because the remedy they seek is attenuated from the injury they have suffered.[1]

### B.      Procedural Protections of WLDs versus BFDs

Plaintiffs also allege in their complaint that they are entitled to WLDs because WLDs are subject to more procedural protections than BFDs. They argue that the denial of a WLD renders a concrete injury because "a waiting list decision cannot be rescinded without notice and comment rulemaking, unlike the BFD policy memo, which a 'future administration could rescind [] just as easily as [the Biden] administration established it.' " (Am. Compl. [20] ¶ 114 (quoting *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 441 (6th Cir. 2022).) Defendants argue that concerns about the recission of BFDs cannot provide Plaintiffs standing because "allegations of

---

[1]      A plaintiff who has received *neither* a BFD nor a WLD would almost certainly have standing to challenge a delay by USCIS in making a WLD. Such a plaintiff has suffered concrete injury by virtue of the fact that USCIS's delay precludes them from receiving work authorization and deferred action, and an order by the court for USCIS to process them for WLDs would entitle them to receive those benefits. Indeed, the court in *De La Torre Molina v. Director of United States Citizenship and Immigration Services* seems to have assumed that such a plaintiff would have standing, as the court proceeded to determine that the court had jurisdiction to rule on a challenge to a delay in WLDs based on the absence of a jurisdiction-stripping provision in the statute. No. 3:25 CV 594 DRL-SJF, 2026 WL 681748, at *1 (N.D. Ind. Mar. 10, 2026). *See also Noorani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 8:25 CV 221, 2025 WL 3282296, at *3 (D. Neb. Nov. 25, 2025) (determining the court had jurisdiction to hear unreasonable delay of WLD claim by plaintiff who had not received a BFD nor a WLD, but doubting plaintiffs would have standing if USCIS were to "determine[] that Noorani's U-visa petition is bona fide, [because] he would no longer need to seek a WLD to obtain those benefits"). Because Plaintiffs in the case before this court have already received the exact equivalent of what they would receive if the court compelled USCIS to make WLDs in their cases, standing is more tenuous.

*possible* future injury are not sufficient." (Mot. [24] at 12–13. (quoting *Lacewell v. Off. of the Comptroller of the Currency*, 999 F.3d 130, 141 (2d Cir. 2021).) The court agrees.

The Seventh Circuit has reaffirmed the fundamental principle in Article III standing analysis that "[i]n the absence of an actual or imminent injury sustained by [plaintiffs], [courts] have no choice but to stay on the sidelines." *Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist., Wis.*, 95 F.4th 501, 507 (7th Cir.), *cert. denied*, 145 S. Ct. 14, 220 L. Ed. 2d 265 (2024). While "[t]he law recognizes that an anticipated future injury may be sufficiently imminent to establish standing, . . . the alleged future injury must also be concrete: conjecture about speculative or possible harm is inadequate." *Id.* at 505. Plaintiffs speculate that a future administration could unilaterally rescind the BFD policy, but they offer no evidence that such a recission is likely to occur in the near future. This is insufficient to establish Article III standing. *See Trump v. New York*, 592 U.S. 125 (2020) (per curiam) (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)) (finding that plaintiffs lacked standing because "any prediction of how the Executive Branch might eventually implement the general statement of policy is 'no more than conjecture' at this time.")

Plaintiffs cite *Olmos v. United States Citizenship & Immigration Services*, 785 F. Supp. 3d 459, 471–72 (D. Neb. 2025), where the district court found that plaintiffs "suffered an actual injury" because while BFDs could be unilaterally rescinded, a potential recission of WLDs would need to follow "proper rule-making procedure, including public notice and comment." *Olmos*, 785 F. Supp. 3d at 471 (quoting *Mir et al v. Jaddou*, 4:23-cv-03046-JFB-MDN, Filing No. 37 at *13 (D. Neb. Dec. 8, 2023)). This court recognizes that distinction as well, but notes that the *Olmos* court did not address the question of whether the harm the plaintiffs alleged was actual or imminent—an essential element of standing.

That element is what appears to be missing here: Plaintiffs' allegations are insufficient to demonstrate that the harm they contemplate is "actual or imminent." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 409 (2013). Anxiety about possible future recissions is understandable,

but such anxiety is legally insufficient to establish Article III standing. *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 977 (7th Cir. 2023) ("[W]e have held that worry and anxiety are not the kind of concrete injury essential to standing."). The court lacks jurisdiction over Plaintiffs' claims.

CONCLUSION

USCIS's motion to dismiss under 12(b)(1) [24] is granted. The Clerk is directed to enter judgment.

ENTER:

Dated: March 17, 2026

_____

REBECCA R. PALLMEYER
United States District Judge